[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 19, 2003
THOMAS K. KAHN
CLERK

No. 02-14182

D. C. Docket No. 00-00823-CR-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN DOYLE DUNN, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(September 19, 2003)**

Before BARKETT and MARCUS, Circuit Judges, and MILLS[*], District Judge.

MARCUS, Circuit Judge:

---

[*]Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

This direct criminal appeal stems from John Doyle Dunn, Jr.'s conviction of one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). On appeal, Dunn argues that the district court erred by denying his motions (1) to suppress statements he made to, and physical evidence collected by, law enforcement officers; (2) to dismiss the indictment against him based on statutory and constitutional speedy trial violations; and (3) to dismiss the indictment against him based on the unconstitutionality of section 922(g). After thorough review, we are persuaded by none of appellant's contentions, and, accordingly, affirm.

**I**

The basic facts developed at a suppression hearing are these. The Housing Authority of the City of Atlanta ("AHA") is a public entity charged with the responsibility of operating Atlanta's public housing communities. Beginning on March 15, 1999, AHA began contracting with Kelly Security, Inc. ("Kelly") for the provision of security guard services at these communities. Kelly guards[1] are armed and carry badges, and they coordinate their activities with the Atlanta

---

[1] For clarity's sake, we will refer to Kelly employees as "guards" and Atlanta police officers as "officers."

Police Department. Notably, the AHA-Kelly contract expressly contemplates that the guards may make arrests.

At approximately 12:30 pm on April 19, 2000, three Kelly guards -- Lieutenant Larry D. Goodwin, Sergeant Kwane Martin and Sergeant Ernest Dixon -- were working at the Harris Homes housing complex when they heard a volley of gunshots. There is some discrepancy in the guards' accounts of exactly what happened next. Goodwin said that upon first hearing the shots the guards moved in the general direction from which the gunfire had come, but before they were able to locate the shooter they heard a second set of shots. He testified that he drove with Martin and Dixon to the area from which they thought this second volley had come, and encountered Dunn approximately 30 seconds to a minute after this second round of gunfire. Martin, by contrast, said that there was a third round of gunshots and that only after this third volley did the guards spot Dunn. Martin testified that there was at least a 5 minute interval between this third volley and their encounter with appellant.

At all events, the three Kelly guards soon spotted Dunn putting a loaded SKS assault rifle into the hatchback storage area of his Camaro. The guards drew their weapons and instructed appellant to stop and put his hands up. Appellant complied and was quickly handcuffed and frisked. Although he was not placed in

the guards' vehicle and was advised that he was not under arrest but rather was being detained pending the arrival of the Atlanta police (who the guards called once Dunn had been secured), Goodwin and Martin both conceded that appellant was not free to leave. Within 10-15 minutes, Atlanta police Officer Hall arrived on the scene and promptly placed Dunn in the back seat of his cruiser.

Appellant stresses that between the time of his initial detention and Officer Hall's arrival, two witnesses, one of whom was a neighbor named Skyree who was known to the guards, informed the guards that Dunn was not responsible for the gunshots. However, appellant says that the guards did not investigate or even consider these witnesses' exculpations of him. Nor, he asserts, did the guards check the ground for shell casings.

Shortly after placing Dunn in the back seat of his patrol car, Hall notified the Atlanta Police Department Gun Unit that he needed a gun investigator on the scene. In response to this request, a Detective Argano arrived approximately 10 minutes after Hall's call. After being briefed by Hall and the 3 guards as to the nature of the situation, Argano Mirandized Dunn, and appellant admitted to owning the assault rifle and to being a convicted felon. Argano also examined the rifle in an effort to determine whether it had recently been fired, although he subsequently could not recall what this examination revealed. Detective Argano

4

confirmed Dunn's status as a felon by having the Gun Unit conduct a record check, recovered the weapon and arrested Dunn for being a felon in possession of a firearm. The total time that elapsed between the guards' initial detention of appellant and his arrest was 20-30 minutes.

On November 21, 2000, appellant was indicted on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). He first appeared in court on February 9, 2001, when he pled not guilty. Dunn was held in custody pending his February 14, 2001 detention hearing, at which a Magistrate Judge ordered him detained without bond. On February 15, 2001, appellant moved to suppress the statements he made to Detective Argano and the evidence collected at the scene, arguing that they were obtained as a product of a de facto arrest without probable cause. On March 14, 2001, the Magistrate Judge held a hearing on these motions, and on June 19, 2001, after undertaking a searching review of our caselaw and that of the Supreme Court, he issued a Report and Recommendation that Dunn's motions be denied.

On the same day, the Magistrate Judge certified the case as ready for trial. On July 3, 2001, appellant filed objections to the Report and Recommendation and moved for additional time to brief his objections, ultimately filing his brief on July 17, 2001. On July 18, 2001, Dunn moved to dismiss the indictment based on a

Commerce Clause challenge to § 922(g), and the government responded to this motion the following day. Subsequently, on July 27, 2001 appellant moved for a "stipulated bench trial," and on August 1, 2001 the government filed a response in which it indicated that it did not oppose the motion, but that it expressly reserved the right to introduce additional evidence at the bench trial in order to make the record complete.

Counsel subsequently exchanged letters regarding the nature of the stipulations and evidence in the case, and in early August, 2001 the government invited defense counsel to schedule the bench trial "at the earliest convenience of the Court (and our schedules)." On February 21, 2002, appellant moved to dismiss the indictment based on alleged constitutional and statutory speedy trial deprivations. The government responded to this motion on March 4, 2002, and on May 2, 2002 the district court denied the motion. In the same order, the court denied Dunn's motion to dismiss the indictment based on the unconstitutionality of § 922(g) and adopted the Magistrate Judge's Report and Recommendation that the suppression motion be denied. The court scheduled trial for May 15, 2002.

On that date, a non-jury trial was held before the district court. Appellant informed the court that he did not contest the facts and evidence presented during the hearing on his motion to suppress evidence, and the parties stipulated that the

essential elements of the offense charged had been established in this case. The district court found Dunn guilty of being a felon in possession of a firearm and sentenced him to 32 months imprisonment, 3 years supervised release and a $100 special assessment. This appeal ensued.

## II

In an appeal from the denial of a suppression motion, we apply a mixed standard of review, "reviewing the court's findings of fact for clear error and its application of the law to those facts de novo." United States v. Tinoco, 304 F.3d 1088, 1116 (11th Cir. 2002) (citing United States v. Gil, 204 F.3d 1347, 1350 (11th Cir. 2000)), cert. denied sub nom., Hernandez v. United States, __ U.S. __, 123 S. Ct. 1484, 155 L. Ed. 2d 231 (2003).

Similarly, "[w]e review a claim under the Speedy Trial Act de novo and review a district court's factual determinations on excludable time for clear error." United States v. Williams, 314 F.3d 552, 556 (11th Cir. 2002) (citation omitted). The same standard applies in the context of appellant's constitutional speedy trial claim. See United States v. Clark, 83 F.3d 1350, 1352 (11th Cir. 1996) (citation omitted). By contrast, we review a refusal to dismiss an indictment under Fed. R.

Crim. P. 48(b) for abuse of discretion.  See United States v. Butler, 792 F.2d 1528,

1534 (11th Cir. 1986) (citation omitted).

Whether Congress possessed the authority under the Commerce Clause to

enact section 922(g) is a question of law that we review de novo.  See United

States v. Lee, 173 F.3d 809, 810 (11th Cir. 1999) (citation omitted).

A.	The Suppression Motion

As a general rule, the Fourth Amendment to the United States Constitution

prohibits state actors[2] from making searches or seizures of the person in the

absence of probable cause.  See United States v. Sharpe, 470 U.S. 675, 690, 105 S.

Ct. 1568, 1577, 84 L. Ed. 2d 605 (1985) (noting "'the general rule requiring

probable cause to make Fourth Amendment "seizures" reasonable'" (quoting

Dunaway v. New York, 442 U.S. 200, 210, 99 S. Ct. 2248, 2255, 60 L. Ed. 2d 824

(1979))).  As the Supreme Court recently explained, "[a] seizure of the person

within the meaning of the Fourth and Fourteenth Amendments occurs when,

'taking into account all of the circumstances surrounding the encounter, the police

conduct would have communicated to a reasonable person that he was not at

---

[2]Neither party disputes that the Kelly guards are properly considered state actors in this case.

8

liberty to ignore the police presence and go about his business.'" Kaupp v. Texas, __ U.S. __, 123 S. Ct. 1843, 1845, 155 L. Ed. 2d 814 (2003) (citing Florida v. Bostick, 501 U.S. 429, 437, 111 S. Ct. 2382, 2387, 115 L. Ed. 2d 389 (1991)) (internal punctuation omitted).

However, in Terry v. Ohio, the Court articulated perhaps the best known exception to the probable cause requirement, holding that minimally intrusive searches and seizures of the person are permissible when a law enforcement officer has an objectively reasonable suspicion that "criminal activity may be afoot." 392 U.S. 1, 30, 88 S. Ct. 1868, 1884, 20 L. Ed. 2d 889 (1968); see also United States v. Arvizu, 534 U.S. 266, 273, 122 S. Ct. 744, 750, 151 L. Ed. 2d 740 (2002) (setting forth the Terry standard); United States v. Cortez, 449 U.S. 411, 417, 101 S. Ct. 690, 695, 66 L. Ed. 2d 621 (1981) ("An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.").

Indeed, the standard that must be satisfied to justify a Terry stop or search is significantly less onerous than is a showing of probable cause to arrest. As the Supreme Court explained in United States v. Sokolow:

> The officer [making a Terry stop] . . . must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.'" [Terry, 392 U.S.] at 27[, 88 S. Ct. at 1883]. The Fourth

9

Amendment requires some minimal level of objective justification for making the stop. That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. We have held that probable cause means "a fair probability that contraband or evidence of a crime will be found," Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527 (1983), and the level of suspicion required for a Terry stop is obviously less demanding than for probable cause.

490 U.S. 1, 7 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1 (1989) (internal punctuation and citations omitted); see also United States v. Hensley, 469 U.S. 221, 229, 105 S. Ct. 675, 680, 83 L. Ed. 2d 604 (1985) ("[I]f police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a Terry stop may be made to investigate that suspicion."); United States v. Hardy, 855 F.2d 753, 758 (11th Cir. 1988) (setting forth the standard for a valid Terry stop).

In this case, Dunn does not contest the satisfaction of this standard, and with good reason. The Kelly guards heard either 2 or 3 separate volleys of gunfire, and within no more than five minutes (and possibly as little as 30 seconds) of the final volley saw appellant placing an assault rifle into his trunk. This plainly constituted grounds for a reasonable suspicion that appellant had committed the crime of discharging a weapon in a public place that was sufficient to justify an investigatory detention under Terry. See, e.g., United States v. Hendricks, 319

F.3d 993, 1004 (7th Cir. 2003) (holding that where an officer saw a loaded handgun for which no permit existed partially hidden underneath a seat in an automobile, he not only had grounds for a <u>Terry</u> stop, but in fact had probable cause to arrest the car's sole occupant), <u>petition for cert. filed</u>, No. 02-11129 (May 21, 2003).

The more difficult question, and the one on which Dunn focuses, is whether the seizure of his person in this case exceeded the outer boundaries of an investigatory <u>Terry</u> stop and became a de facto arrest. Specifically, appellant argues that a de facto arrest occurred because (1) between his initial detention and his formal arrest, neither the guards nor the officers did anything to confirm their suspicions that he in fact fired the shots the guards had heard; and (2) his detention was too intrusive to be permissible under <u>Terry</u>, as he was held by the guards at gunpoint, handcuffed, Mirandized and placed in the back seat of a police cruiser prior to being formally arrested. <u>See generally</u> <u>Hayes v. Florida</u>, 470 U.S. 811, 815-16, 105 S. Ct. 1643, 1646, 84 L. Ed. 2d 705 (1985) ("[A]t some point in the investigative process, police procedures can qualitatively and quantitatively be so intrusive with respect to a suspect's freedom of movement and privacy interests as to trigger the full protection of the Fourth and Fourteenth Amendments.") (citations omitted); <u>Sharpe</u>, 470 U.S. at 685, 105 S. Ct. at 1575 (recognizing that it

11

is possible for a Terry stop to escalate in duration and/or intensity so as to metamorphose into a full scale arrest, and specifically noting the potentially "difficult line-drawing problems in distinguishing an investigative stop from a de facto arrest"); United States v. Diaz-Lizaraza, 981 F.2d 1216, 1221 (11th Cir. 1993) ("The character of a seizure as arrest or Terry stop depends on the nature and degree of intrusion, not on whether the officer pronounces the detainee 'under arrest.'" (citing Dunaway, 442 U.S. at 212, 99 S. Ct. at 2256)); Hardy, 855 F.2d at 758 (considering "whether the investigative detention of [the] appellants was sufficiently limited in scope and duration to remain within the bounds permitted by Terry v. Ohio and not ripen into a full-scale arrest").  If so, Terry's reasonable articulable suspicion standard is supplanted by the probable cause requirement that attends the making of arrests, whether of the formal or de facto variety.  See United States v. Hastamorir, 881 F.2d 1551, 1556 (11th Cir. 1989) (noting that "a de facto arrest requir[es] probable cause"); Thomas v. Newsome, 821 F.2d 1550, 1554 (11th Cir. 1987) (same).

If Dunn was subjected to a de facto arrest and that arrest was not supported by probable cause, in the absence of "an act of free will [sufficient] to purge the primary taint of the unlawful invasion," any statements appellant made and any evidence gathered as a result of the unconstitutional seizure must be suppressed.

12

See Kaupp, __ U.S. at __, 123 S. Ct. at 1847 ("Since Kaupp was arrested before he was questioned, and because the state does not even claim that the sheriff's department had probable cause to detain him at that point, well-established precedent requires suppression of the confession unless that confession was 'an act of free will [sufficient] to purge the primary taint of the unlawful invasion.'" (quoting Wong Sun v. United States, 371 U.S. 471, 486, 83 S. Ct. 407, 416-17, 9 L. Ed. 2d 441 (1963))).

In this case, we find it unnecessary to engage in a detailed analysis of whether Dunn's detention was permissible under Terry. Even assuming the guards and/or police in this case effected a de facto arrest that required probable cause, they plainly had probable cause to arrest appellant for discharging a weapon in public. As we have explained:

> "For probable cause to exist, . . . an arrest must be objectively reasonable based on the totality of the circumstances." Lee[ v. Ferraro], 284 F.3d [1188,] 1195 [(11th Cir. 2002)]. "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998) (internal quotation marks omitted). "Although probable cause requires more than suspicion, it does not require convincing proof, and need not reach the [same] standard

13

of conclusiveness and probability as the facts necessary to support a conviction." Lee, 284 F.3d at 1195 (internal quotation marks and citations omitted) (alteration in original).

Wood v. Kesler, 323 F.3d 872, 878 (11th Cir. 2003); see also United States v. Gordon, 231 F.3d 750, 758 (11th Cir. 2000) ("'Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime.'" (quoting United States v. Gonzalez, 969 F.2d 999, 1002 (11th Cir. 1992))).

In this case, the government has conceded that neither the guards nor the officers had probable cause to believe that Dunn was a felon in possession of a firearm prior to his informing them of his status as a felon. However, it is equally evident that they did have probable cause to believe that he had discharged a firearm in public, in violation of Ga. Code § 16-11-103 ("A person is guilty of a misdemeanor when, without legal justification, he discharges a gun or pistol on or within 50 yards of a public highway or street.") and Atlanta City Code § 106-301 ("Shooting any firearms in the city, unless in a licensed shooting gallery or by permission of the council on military parades, is prohibited."). See Latimer v. State, 420 S.E. 2d 91, 93 (Ga. Ct. App. 1992) (holding that the arresting officers

had probable cause to believe that the defendant had violated section 16-11-103 where they had received complaints of gunshots, loud music being played and a chainsaw being operated at an apartment complex and, after being invited into the defendant's apartment, saw a firearm in plain view); see also United States v. Arcobasso, 882 F.2d 1304, 1306 (8th Cir. 1989) (holding that there was probable cause to arrest the defendant for knowingly shooting into a dwelling where the officer responded to a report of gunshots and saw the defendant "dry-firing" a gun); Daniels v. Downing, No. Civ.01-1673 (D. Minn. Jan. 30, 2003) (holding that there was probable cause to arrest an individual for violating Minneapolis's ordinance prohibiting the taking of a substantial step toward firing a weapon where the individual was seen pointing what turned out to be a BB gun at a house); United States v. Scott, 220 F. Supp. 2d 426, 429 (E.D. Pa. 2002) (holding that probable cause to arrest the defendant existed where an undercover officer witnessed shots fired from a vehicle, was told by an informant that the defendant had exited the vehicle and then saw the defendant discard a weapon); Bell v. Dawson, 144 F. Supp. 2d 454, 460 (W.D.N.C. 2001) (holding that there was probable cause to arrest the plaintiff for "discharg[ing] a firearm in violation of a county ordinance" where the officer responded to a call of "shots fired," two firearms were in plain view at the premises[] and the Plaintiff admitted that he had

15

fired the shotgun"); United States v. Anderson, 924 F. Supp. 286, 289 (D.D.C. 1996) ("Officer Thomas, responding to a radio call regarding gunshots in the area, as well as hearing rapid gunfire himself, observed the defendant driving down the street with no headlights. Upon seeing . . . Thomas driving in a marked police cruiser, the defendant abandoned his car in the street, left the engine running, and he fled from the scene. Based on these facts, the Court finds that the MPD had probable cause to pursue and arrest the defendant.").

In this case, after hearing either two or three volleys of gunfire and subsequently moving in the direction from which they believed the shots had come, the guards saw Dunn placing an SKS assault rifle into the hatchback of his Camaro. Plainly, a reasonable person could have concluded that appellant had just fired his weapon. This conclusion is not altered by the fact that no shell casings were located in the immediate vicinity, as the guards did not know exactly where the shots had been fired from. Moreover, as much as five minutes may have passed between the last shot and the guards' encounter with Dunn, and as such it would have been reasonable to believe that appellant fired them somewhere else and then walked to his car -- indeed, this was the overwhelmingly likely scenario from the guards' perspective. We also note that the uncorroborated accounts of witnesses who declined to remain at the scene did not vitiate this probable cause.

Because the guards and/or officers had probable cause to arrest Dunn, there was no basis for suppressing the rifle or the statements appellant made to Detective Argano, and the district court did not err in denying the suppression motion.

B.    The Speedy Trial Claims

1.    The Speedy Trial Act Claim

Under the Speedy Trial Act:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1).

However, the Act also provides for the exclusion of certain specified periods of time from the speedy trial calculation. Of particular relevance in this case are sections 3161(h)(1)(F) and (J), which exclude from the seventy day period "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," 18

17

U.S.C. § 3161(h)(1)(F), and "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court."  18 U.S.C. § 3161(h)(1)(J).

We explained the interaction of these provisions in United States v. Davenport:

> For pretrial motions that do not require hearings, § 3161[(h)](1)(F) excludes the time required for "prompt disposition" of the motion.  The length of the exclusion depends upon when the court takes the motion "under advisement" for purposes of § 3161(h)(1)(J).  If the court has all the information necessary to rule on the motion at the time the motion is filed, the court immediately has the motion under advisement under § 3161(h)(1)(J) and thirty days may be excluded from the speedy trial clock due to the motion.  The court may establish a period of time after the motion is filed, however, within which parties may submit materials relating to the motion.  The motion is not under advisement by the court during this period of time, which is automatically excluded from the speedy trial clock and is not subject to a reasonableness requirement. Once the period for filing additional materials expires, the court takes the motion under advisement for purposes of § 3161(h)(1)(J) and no more than thirty additional days may be excluded from the speedy trial clock.
>
> For motions that require hearings, §3161(h)(1)(F) excludes all time between the filing of the motion and the conclusion of the hearing at which it is addressed. This entire period is excluded from the speedy trial clock and is not subject to review regarding its reasonableness.

> Once the hearing is concluded, the motion is treated exactly like a motion for which no hearing is required. If the court has all materials necessary to rule on the motion, the court is deemed to have taken the motion under advisement immediately following the hearing and § 3161(h)(1)(J) permits no more than thirty additional days to be excluded.

935 F.2d 1223, 1228 (11ᵗʰ Cir. 1991) (citing Henderson v. United States, 476 U.S. 321, 327-28, 106 S. Ct. 1871, 1876-77, 90 L. Ed. 2d 299 (1986)).

In this case, Dunn was indicted on November 21, 2000 and he first appeared before a Magistrate Judge at his arraignment on February 9, 2001. Although this initial appearance typically would have started the speedy trial clock running, the government moved on the same day for a pretrial detention order, which tolled the speedy trial period. A hearing on this motion was scheduled for February 14, 2002, and at this proceeding Dunn was ordered detained pending trial. The following day, appellant filed his pretrial suppression motion and thereby tolled the speedy trial period that otherwise would have began running on February 15, 2001. On March 14, 2001, a hearing on this motion was held before the Magistrate Judge, and the parties subsequently submitted written briefs on the Fourth Amendment issues. The Magistrate Judge issued a Report and Recommendation on June 19, 2001, and on the same day certified the case as ready for trial. At this point, the district court took the suppression motion "under

19

advisement" for Speedy Trial purposes and the speedy trial period was tolled for 30 days under § 3161(h)(1)(J).  On July 3, 2001 (during this 30 day period), Dunn requested more time to file his objections to the Report and Recommendation, thus tolling the running of the 30 days.  He ultimately filed his objections on July 17, 2001, and the following day appellant moved to dismiss the indictment on the ground that § 922(g) exceeded the outer bounds of Congress's power to regulate interstate commerce.  On July 20, 2001, this motion and the government's response, along with appellant's suppression motion, were submitted to the district court.  Accordingly, under section 3161(h)(1)(J), 30 days were excludable from this point, while these motions were under the district court's advisement.

However, on July 27, 2001 (again, during the ensuing 30 day period), appellant filed a motion for a "stipulated bench trial," i.e., a motion seeking leave of court to hold a bench trial based on Dunn's stipulations as to each element of a § 922(g) violation.  On August 1, 2001 the government responded to this request, saying that it did not oppose the motion.  However, the government also said that it expressly reserved the right to introduce additional evidence at the bench trial in order to make the record complete.

Following the government's agreement to the bench trial, nothing happened in the case until February 21, 2002, when Dunn moved to dismiss the indictment

under the Speedy Trial Act.[3]  The government asserts, however, that its reservations about the evidence to be presented at the stipulated bench trial created an issue on which an evidentiary hearing needed to be held, and that this hearing was not conducted until the time of trial itself.  Accordingly, it contends, the entire time between the filing of its response to Dunn's motion for a stipulated bench trial and the trial was excludable under 18 U.S.C. § 3161(h)(1)(F).  See Davenport, 935 F.2d at 1228 ("§ 3161(h)(1)(F) excludes all time between the filing of the motion and the conclusion of the hearing at which it is addressed"); United States v. Garcia, 778 F.2d 1558, 1562 (11th Cir. 1986) (holding, in the context of a James motion, that the entire time between the filing of the motion and the hearing on that motion, which was conducted at trial, was excludable under the Speedy Trial Act).

The district court agreed, rejecting appellant's Speedy Trial Act claim by reasoning that "[b]ecause there are issues of contention as to the relevant evidence regarding Defendant's guilt, and his claims of acceptance of responsibility, an evidentiary hearing is required.  Because a hearing is required, the time from the

---

[3]As indicated, supra, the government responded to this motion on March 4, 2002.  Even if we exclude from the speedy trial calculation the 12 days between the filing of the motion and the government's response, as well the ensuing 30 days under § 3161(h)(1)(J), there remains 7 and ½ months of time the excludability of which depends on the need for a hearing on Dunn's motion for a stipulated bench trial.

filing of the bench trial motion to the disposition of such motion is excludable. Therefore, no violation of the Speedy Trial Act has occurred."

Appellant, by contrast, argues that no hearing on the motion for a stipulated bench trial was required, as the government had consented to such a proceeding. Instead, he contends, the district court took the motion "under advisement" on August 1, 2001, and that the next 30 days were excludable under section 3161(h)(1)(J). Accordingly, he says, the speedy trial clock began running on August 31, 2001 and expired on November 9, 2001. This was nearly 2 and ½ months prior to the filing of his motion to dismiss on speedy trial grounds and over 6 months prior to the stipulated bench trial in this case. He says that the trial court's post hoc determination that a hearing was necessary to resolve the stipulated bench trial motion was "simply a 'cover' for its failure to allow [appellant] a fair and speedy resolution of his case."

The issue on which appellant's Speedy Trial Act claim turns is whether the district court correctly concluded that an evidentiary hearing was required on the stipulated bench trial motion. If so, then all of the time between the motion and the hearing is excludable, regardless of its reasonableness. See Davenport, 935 F.2d at 1228. If not, however, then the speedy trial period began running on August 31, 2001 and expired months before Dunn's trial. As the First Circuit said

22

in a case featuring a similar argument, "[the appellant] first contends that the court erred in determining that a hearing was required for his motions . . . .  Such an error would be significant, because in contrast to the potentially unreasonable time that is excluded from [Speedy Trial Act] calculations when a hearing is required, only 30 days may be excluded when a hearing is not required."  United States v. Salimonu, 182 F.3d 63, 68 (1ˢᵗ Cir. 1999).

Although there is not a great deal of caselaw on the subject, appellate courts generally have been reluctant to question the judgment of a district court that a hearing[4] is required.  The reasons for conducting a hearing on a motion typically are fact-intensive, and accordingly are uniquely within the purview of the district court.  If a movant requests a hearing, this may suffice to establish the necessity of conducting such a proceeding.  See Salimonu, 182 F.3d at 68 ("Because Salimonu requested a hearing in this case, we properly can assume that such a hearing was required for section 3161(h)(1)(F) purposes."); accord United States v. Tannehill,

---

[4]Notably, the courts of appeals typically have afforded a liberal definition to the term "hearing," as it is used in § 3161(h)(1)(F). See United States v. Grosz, 76 F.3d 1318, 1324-25 (5ᵗʰ Cir. 1996) (saying that a hearing occurs whenever the district judge discusses the merits of a motion with counsel for the party against whom the ruling on the motion is ultimately rendered); Tannehill, 49 F.3d at 1053 ("[I]t is clear that the term includes a situation in which the district court hears argument of counsel and considers it prior to making its ruling . . . ."); United States v. Morales-Rivera, 203 F. Supp. 2d 92, 101 (D.P.R. 2002) ("Because the March 4, 2002 proceedings included just this sort of brief but substantive 'give-and-take among counsel and the court,' they were a hearing for the purposes of the Speedy Trial Act.").

23

49 F.3d 1049, 1052 n.4 (5th Cir. 1995).  Similarly, a hearing may be said to be required if the motion in question is of a type that typically would not be resolved in the absence of a hearing.  See Salimonu, 182 F.3d at 68; see also Grosz, 76 F.3d at 1325 & n.7 (holding that a hearing is "required" as long as it is not held simply "to avoid the operation of the Speedy Trial Act"); Morales-Rivera, 203 F. Supp. 2d at 101-02 (summarizing the existent caselaw on when a hearing is "required" under § 3161(h)(1)(F)).

In this case, the district court did not err in concluding that a hearing was "required," and that Dunn's Speedy Trial Act motion was due to be denied.  Indeed, there are several important reasons why it is appropriate for a district court to conduct a hearing on a defendant's stipulated bench trial motion.  First, a motion for a stipulated bench trial is one implicating the forfeiture of basic rights of the defendant.  Most obviously, it involves the waiver of the Sixth Amendment right to a jury trial.  Moreover, because a stipulated bench trial may be tantamount to a guilty plea, it also likely entails waiving the defendant's Sixth Amendment rights to confront and cross-examine the government's witnesses and to call witnesses on his behalf.  Although district courts are not required to conduct an in personam examination of the defendant to ensure that these waivers are knowing and voluntary, see Cabberiza v. Moore, 217 F.3d 1329, 1333-34 (11th Cir. 2000)

24

(citing United States v. Tobias, 662 F.2d 381, 387 (5th Cir. Unit B 1981)), such a personal evaluation may be a valuable prophylactic measure. Moreover, in this case it was not altogether clear from the cold record whether appellant (as opposed to defense counsel) previously had waived in writing his right to a jury trial.[5]

Second, in this case the government expressly reserved the right to introduce additional evidence at the bench trial in order to make the record complete, observing that it opposed limiting the evidential foundation for the bench trial to the stipulations alone. As such, a hearing would have provided an opportunity for a party to supplement the record, for the district court to evaluate any such additional evidence and for the court to determine whether to exercise its discretion to permit a non-jury trial. Indeed, district courts are under no obligation to conduct bench trials in criminal cases at all. This is so even in cases where the defendant and the government both agree to such a format. See Fed. R. Crim. P. 23(a) ("Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the government.") (emphasis added). The district court did not err in holding a hearing to ensure that its ruling on appellant's stipulated bench trial

---

[5]Although the record contained a written agreement to the stipulated bench trial filed on behalf of Dunn, there was no indication that Dunn had personally agreed to this format.

25

motion would be fully informed, i.e., would be made only after the parties clarified the nature and extent of the proofs that would be offered at the requested proceeding.

In short, the district court properly determined that a hearing on appellant's stipulated bench trial motion was "required" within the meaning of § 3161(h)(1)(F). Accordingly, the time between Dunn's filing of this motion and the commencement of his trial, at which time the hearing was conducted, is excludable from the speedy trial calculus, and his Speedy Trial Act claim is unpersuasive.

2. Appellant's Sixth Amendment Claim

The Supreme Court has identified four basic factors that courts should consider in determining whether a defendant has been deprived of his constitutional right to a speedy trial: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant. See Barker v. Wingo, 407 U.S. 514, 530-32, 92 S. Ct. 2182, 2192-93, 33 L. Ed. 2d 101 (1972). As we have noted, the Court explained in Barker that "[t]he first factor serves a triggering function; unless some 'presumptively prejudicial' period of delay occurred, we need not conduct the remainder of the analysis." United States v. Register, 182 F.3d 820, 827 (11th Cir. 1999) (citing

Barker, 407 U.S. at 530, 92 S. Ct. at 2192). Specifically, the delay with which we are concerned is that between the date of the indictment and the trial date. See United States v. Schlei, 122 F.3d 944, 987 (11th Cir. 1997). A delay is considered presumptively prejudicial as it approaches one year. See Doggett v. United States, 505 U.S. 647, 651-52 & n.1, 112 S. Ct. 2686, 2690-91 & n.1, 120 L. Ed. 2d 520 (1992); Schlei, 122 F.3d at 987 (citing Davenport, 935 F.2d at 1239).

In this case, nearly 18 months elapsed between the November 21, 2000 indictment and the May 15, 2002 trial. This is presumptively prejudicial. See United States v. Clark, 83 F.3d 1350, 1352 (11th Cir. 1996) (17 months); United States v. Ashford, 924 F.2d 1416, 1421 (7th Cir. 1991) (18 months); Millard v. Lynaugh, 810 F.2d 1403, 1406 (5th Cir. 1987) (18 months). Accordingly, we proceed to consider the remaining factors. In doing so, however, we are mindful that "'[i]n this circuit, a defendant generally must show actual prejudice unless the first three factors . . . all weigh heavily against the government.'" Register, 182 F.3d at 827 (quoting Davenport, 935 F.2d at 1239). Here, there is no indication that the prosecution was any more responsible than the defense for the delay between the filing of the motion for a stipulated bench trial and the disposition of that motion 9 months later. Indeed, in its denial of Dunn's motion to dismiss the indictment on Sixth Amendment speedy trial grounds, the district court noted the

27

government's argument that the delay in this case was attributable to the "unusual stipulated bench trial motion," the September 11th tragedy and the court's scheduling difficulties due to illness, and concluded that "matters outside the control of the parties resulted in the delay." Accordingly, the second Barker factor does not weigh heavily against the government.

Nor, despite the fact that appellant moved to dismiss the indictment on constitutional and statutory speedy trial grounds, does it seem that Dunn was especially vigilant in asserting his speedy trial right. As the district court recognized, he waited over 12 months following his indictment (and over 2 months following the date on which he says the speedy trial period expired) before raising his speedy trial claim. None of his motions prior to that filed in February, 2002 raised the issue. See Register, 182 F.3d at 828 (holding that where the defendant asserted his speedy trial right on 2 separate occasions, and on several occasions moved for continuances, we could not say that the third Barker factor weighed heavily against the government).

Because the first three Barker factors do not uniformly weigh heavily against the government, appellant must demonstrate actual prejudice, which he may do in one of three ways: "(1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) possibility that the accused's defense will be

impaired." Clark, 83 F.3d at 1354 (citing Doggett, 505 U.S. at 654, 112 S. Ct. at 2692). Of these, the most serious concern is the third. See Barker, 407 U.S. at 532, 92 S. Ct. at 2193. Although appellant says that he spent an excessive amount of time in a pretrial detention facility, he has not demonstrated in any way that the conditions under which he was held or the length of his confinement rendered the delay a constitutional violation. Moreover and most importantly, appellant has not shown -- and could not show -- that the delay prejudiced his defense at all because he had no defense, as he had stipulated to each element of the § 922(g) offense. Accordingly, he has not demonstrated actual prejudice, and his constitutional speedy trial claim is unmeritorious.

Finally, Fed. R. Crim. P. 48(b)(3) provides that "[t]he court may dismiss an indictment, information, or complaint if unnecessary delay occurs in . . . bringing a defendant to trial. We have held that "[t]he rule thus vests much discretion in the trial court, and dismissal is mandatory only if the defendant's constitutional rights have been violated." United States v. Butler, 792 F.2d 1528, 1533 (11th Cir. 1986). In this case, we already have concluded that Dunn's Sixth Amendment rights were not violated, and accordingly the district court was not obligated to grant his motion for dismissal under Rule 48(b). Simply stated, there is no basis

for concluding that the district court abused its discretion in refusing to grant appellant's motion insofar as it relied on this Rule.

C.     The Validity of 18 U.S.C. § 922(g) as an Exercise of Congress's Commerce Power

Dunn concedes that there is binding caselaw in this circuit foreclosing his Commerce Clause argument, and that he is raising this claim only for the purpose of pursuing it in the context of en banc review or in a petition for a writ of certiorari. His assessment of our law is correct. See United States v. Scott, 263 F.3d 1270, 1274 (11th Cir. 2001) ("Neither Morrison nor Jones modifies our decision in McAllister, upholding the felon-in-possession-of-a-firearm statute, 18 U.S.C. § 922(g), under Congress' Commerce Clause power." (citing United States v. McAllister, 77 F.3d 387, 390 (11th Cir. 1996))) (other citations omitted), cert. denied 534 U.S. 1166, 122 S. Ct. 1182, 152 L. Ed. 2d 124 (2002). This conclusion is consistent with those reached by other circuits. See United States v. Stuckey, 255 F.3d 528, 530 (8th Cir.), cert. denied, 534 U.S. 1011, 122 S. Ct. 498, 151 L. Ed. 2d 409 (2001); United States v. Santiago, 238 F.3d 213, 216-17 (2d Cir. 2001); United States v. Dorris, 236 F.3d 582, 585-86 (10th Cir. 2000); United

States v. Napier, 233 F.3d 394, 399-402 (6th Cir. 2000); <u>United States v. Wesela</u>, 223 F.3d 656, 659-60 (7th Cir. 2000).

In short, we find none of appellant's claims persuasive, and, accordingly, we affirm.

**AFFIRMED.**

BARKETT, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that we need not decide whether Dunn's detention was permissible under Terry, since there was probable cause to arrest Dunn for discharging a weapon in public. Therefore, the district court did not err in denying Dunn's motion to suppress. I also agree that Dunn's Commerce Clause argument lacks merit. However, I believe that the trial court erred in concluding that a pre-trial evidentiary hearing was required within the meaning of § 3161(h)(1)(F) to resolve issues of contention regarding Dunn's guilt under § 922(g) and acceptance of responsibility under U.S.S.G. § 3E1.1. Because these were the specific reasons given by the district court for having the hearing, yet the record shows that these reasons were not supported by the actual facts of this case, I believe the judge erred in denying Dunn's motion to dismiss on speedy trial grounds.

Dunn stipulated to each element necessary to convict him of violating § 922(g), namely, that "1) he possessed the rifle as alleged in the indictment; 2) the rifle was manufactured outside of the State of Georgia, and 3) he is a convicted felon," when he filed his motion for a stipulated bench trial on July 27, 2001. R1-31, at 2. Dunn further stipulated that "[a]side from the Fourth Amendment issue and the Commerce Clause issue, there are no disputed issues in this case." Id. at 3.

On August 1, 2001, the government responded by stating that it did not oppose Dunn's motion but "reserve[d] the right to present additional, albeit brief, evidence during a Bench Trial in order to make the record complete." R1-32 (emphasis supplied). The government also indicated that it "contest[ed] the issue of Defendant's 'acceptance of responsibility,' and reserve[d] the right to present its evidence and legal authority on [that] issue . . . at Defendant's sentencing." Id. (emphasis supplied).

No further action was taken in this case until Dunn filed his motion to dismiss for pretrial delay on February 21, 2002–a period of almost six months, well beyond the 70-day limit imposed by the Speedy Trial Act. Thereafter, the government attempted to justify this delay on the grounds that there were "issues of contention" between the parties as to the evidence necessary to establish Dunn's "guilt or innocence" and "to counter any claim of 'acceptance of responsibility'" that required a pre-trial evidentiary hearing. See R1-34, at 1-2. Relying on the government's representation, the district court accepted this justification, holding that "because there [were] issues of contention as to the relevant evidence regarding Defendant's guilt, and his claims of acceptance of responsibility, an evidentiary hearing [was] required." R1-35, at 4.

However, the record indicates that there were <u>no</u> issues of contention as to the relevant evidence regarding Dunn's <u>guilt</u> under § 922(g) that required an evidentiary hearing. In an August 6, 2001, letter that is attached as an exhibit to the government's response to Dunn's motion to dismiss for pretrial delay, Dunn's attorney invited the Assistant U.S. Attorney handling Dunn's case to draft a proposed stipulation regarding each element of § 922(g). <u>See</u> R1-34, Ex. A. She also stated:

> [I]n your response to Mr. Dunn's motion [for a stipulated bench trial], you suggest that there is additional evidence that you would like to put up. As Mr. Dunn intends to stipulate to all three essential elements of the offense, I am not sure what other evidence would be relevant to his guilt of the charge. However, assuming that the evidence is accurate and correct, Mr. Dunn is still probably willing to stipulate to it, so as to unburden the government further at trial.

<u>Id.</u> On August 7, 2001, the Assistant U.S. Attorney replied by proposing three stipulations that were materially identical to the three stipulations Dunn had made in his motion for a stipulated bench trial <u>and</u> to the three joint stipulations of fact eventually submitted by the parties over nine months later. <u>Compare</u> R1-34, Ex. B <u>with</u> R1-31 <u>and with</u> R1-36. The Assistant U.S. Attorney further explained that:

34

The only evidence that I can foresee introducing is the physical evidence seized, and which we can then substitute photos into the record for the actual items [sic]. I would do this <u>only for the sake of completeness of the record and so that any appellate court would not be misguided as to the type and style of the firearm in question</u>.

R1-34, Ex. B (emphasis supplied).

In sum, the government's argument in its March 4, 2002, response to Dunn's motion to dismiss for pretrial delay that "issues of contention" existed as to the evidence regarding Dunn's "guilt" seems patently disingenuous. By the government's own admission, the only additional evidence it wished to introduce at trial was evidence relating to the type and style of Dunn's firearm; moreover, its sole purpose in doing so was "<u>in order to make the record complete</u>," R1-32 (emphasis supplied), that is, "<u>for the sake of completeness of the record and so that any appellate court would not be misguided as to the type and style of the firearm in question</u>." R1-34, Ex. B (emphasis supplied). Further, Dunn plainly was prepared to stipulate, and did in fact stipulate, to these facts about his weapon. In short, the government's claim of "issues of contention" concerning Dunn's "guilt or innocence" is not borne out by the facts.

Likewise, there appears to be no basis for the government's argument that a pre-trial evidentiary hearing was necessary to resolve "issues of contention as to the relevant evidence regarding . . . [Dunn's] claims of acceptance of responsibility"–this being an issue that is dependent upon a prior judgment of guilt and properly reserved for sentencing, as the government previously recognized. See Government's Response to Defendant's Motion for a Stipulated Bench Trial, R1-32 (stating that the government "reserves the right to present its evidence and legal authority on the issue of acceptance of responsibility under U.S.S.G. § 3E1.1, at Defendant's sentencing (provided Defendant is convicted of the alleged crimes)." Again, the government's post-hoc justification rings hollow.

As the government elsewhere concedes, the delay in Dunn's case had little to do with any of the foregoing. Rather,

> [t]he delay in this case resulted from the unusual motion for a stipulated bench trial, that was agreed upon by the Government, and the Court's scheduling difficulties (which included time in around September 11, 2001[)]; the Court's duties in the Newnan Division of the Northern District of Georgia; and the Court's own absence for surgery.

R1-34, at 6 (emphasis supplied).

In <u>U.S. v. Grosz</u>, 76 F.3d. 1318 (5th Cir. 1996), the Fifth Circuit recognized an important limitation on the principle that all the time between the filing of a pre-trial motion that requires a hearing and the conclusion of the hearing at which it is addressed is excluded under § 3161(h)(1)(F). The Fifth Circuit acknowledged, as any reviewing court must, that the government may not manufacture a hearing <u>in order to</u> avoid operation of Speedy Trial Act. <u>Id.</u> at 1325, n. 7. Regrettably, a careful review of the record suggests that such a circumstance occurred here. Though I certainly agree with the majority that there may be good reasons for having a hearing on a motion for a stipulated bench trial, and that we should show deference to a trial court's judgment that such a hearing is necessary, that is not the issue here. The question here is whether the judge's actual reasons for holding a hearing should be countenanced as sufficient to overcome the defendant's speedy trial rights. In fact, none of the reasons suggested by the majority for having a hearing were relied upon by the district court. Instead, the record is clear that the trial judge's actual reasons for requiring a hearing that served as the basis for denying Dunn's motion to dismiss were factually mistaken. Thus, I believe that in the specific circumstances of this case Dunn's motion should have been granted. <u>Cf.</u>, <u>Grosz</u>, 76 F. 3d at 1325 n.7 ("We acknowledge that we would not recognize the exchange as a 'hearing' if the record

demonstrated an attempt on the part of . . . the government to manufacture a 'hearing' to avoid the operation of the Speedy Trial Act.").  For these reasons, I respectfully dissent from Part II.B.1 of the majority's opinion in this case.