[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10351

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

RAYMOND LEE KELLY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:17-cr-00291-CEM-DCI-1

_____

Before Rosenbaum, Branch, and Grant, Circuit Judges.

PER CURIAM:

Raymond Lee Kelly appeals his conviction for possession of a firearm after a felony conviction, in violation of 18 U.S.C. § 922(g)(1). He challenges his conviction on two grounds. First, he contends that the district court erred in denying his motion to dismiss the indictment on speedy-trial grounds based on the government's failure to arrest him for 848 days post-indictment. Second, he argues that the government failed to present sufficient evidence that he possessed the gun found in the center console of the car he fled from following a traffic stop. After careful review, we affirm.

## I.

Kelly was indicted in this case on December 7, 2017, but he wasn't arrested until April 3, 2020. Based on that 848-day delay, he moved to dismiss the indictment on constitutional speedy-trial grounds. The district court denied the motion after an evidentiary hearing. The court found that the delay, though long enough to be presumptively prejudicial, was justified because during that time Kelly was in state custody on pending state criminal charges, and the government had filed a detainer to bring him to federal custody once the state proceedings concluded. The court also found that Kelly failed to establish any actual prejudice caused by the delay.

Whether a defendant has been deprived of his constitutional right to a speedy trial is a mixed question of law and fact. *United States v. Villarreal*, 613 F.3d 1344, 1349 (11th Cir. 2010). We review a district court's legal conclusions *de novo* and its factual findings for clear error. *Id.* We will hold a factual finding clearly erroneous only if we are left with the definite and firm conviction that a mistake has been made. *Id.*

The Sixth Amendment provides that in all criminal prosecutions the accused shall enjoy the right to a speedy trial. U.S. Const. amend. VI. We analyze speedy-trial claims under a four-factor balancing test, considering the (1) length of the delay, (2) reason for the delay, (3) defendant's assertion of the right, and (4) actual prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *United States v. Ingram*, 446 F.3d 1332, 1336 (11th Cir. 2006).

The first factor must be satisfied to proceed with the rest of the analysis. *United States v. Dunn*, 345 F.3d 1285, 1296 (11th Cir. 2003). A post-indictment delay of over one year is generally sufficient to satisfy the first factor. *Id.* Only pretrial delay following a person's arrest, charge, or indictment is relevant to whether the Sixth Amendment analysis is triggered. *Ingram*, 446 F.3d at 1339. Nevertheless, once the speedy-trial analysis is triggered, we may consider inordinate pre-indictment delay to determine how heavily the post-indictment delay weighs against the government. *Id.*

Under the second factor, different reasons for delay are accorded different weights. *United States v. Oliva*, 909 F.3d 1292, 1301 (11th Cir. 2018). The government bears the burden of

establishing valid reasons for the delay. *Villarreal*, 613 F.3d at 1351. Deliberate attempts to delay trial to impair the defense weigh heavily against the government. *Barker*, 407 U.S. at 531. Neutral reasons—including negligence or overcrowded courts—weigh less heavily against the government but still should be considered because the ultimate responsibility for the circumstances rests with the government and not the defendant. *Id.* And valid reasons justify appropriate delay. *Id.* The government's failure to pursue a defendant diligently will weigh against it, more or less heavily depending on whether the government acted in good or bad faith. *Villarreal*, 613 F.3d at 1351.

Under the third factor, "a defendant has some responsibility to assert a speedy trial claim," and his failure to assert that right may weigh against him. *Barker*, 407 U.S. at 529; *see Villareal*, 613 F.3d at 1354. If a defendant asserts his right in a timely manner, then he raises an "inference that [he] was not at fault for the delay and that the delay prejudiced [him]." *Villareal*, 613 F.3d at 1354 (quotation marks omitted).

Finally, "the defendant must demonstrate actual prejudice unless each of the first three factors weighs heavily against the government." *United States v. Harris*, 376 F.3d 1282, 1290 (11th Cir. 2004) (quotation marks omitted). When evaluating actual prejudice, we consider three policy interests that the right to a speedy trial was designed to protect: (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the chance that the defense will be impaired.

*Villareal*, 613 F.3d at 1355.  Mere conclusory allegations of impairment to one's defense are insufficient to prove actual prejudice. *United States v. Clark*, 83 F.3d 1350, 1354 (11th Cir. 1996).

Here, the district court properly denied Kelly's motion to dismiss the indictment on speedy-trial grounds.  First, the delay of 848 days between indictment and arrest is sufficient to trigger the Sixth Amendment speedy-trial analysis, and we assume it also tips the first factor heavily against the government in conjunction with some pre-indictment delay.  *See Ingram*, 446 F.3d at 1339; *Dunn*, 345 F.3d at 1296.  The parties also agree that the third factor weighs against the government because the record doesn't establish that Kelly knew of the indictment against him until his arrest, after which time he promptly asserted his speedy-trial rights.  *See Villareal*, 613 F.3d at 1354.

The second factor, however, is at least neutral if not in the government's favor.[1]  Kelly doesn't dispute that he was in state custody from the time of his indictment to his arrest in federal court.  Nor was he simply serving a sentence in state custody.  He was actively being prosecuted in more than one jurisdiction.  The government's evidence established that it was reasonably diligent in ensuring that it knew Kelly's whereabouts and that he would be transferred to federal custody to face the charges in this case once he was released from state custody.  And Kelly was in fact

---

[1] Kelly alleges that the government was at worst "negligent," not that it acted in bad faith or for an improper motive.

transferred to federal custody promptly upon the resolution of the state proceedings.

We see no basis in the record to conclude that the federal government's choice to defer its prosecution until the resolution of the state criminal cases wasn't a valid reason for the delay. *See, e.g.*, *United States v. Schreane*, 331 F.3d 548, 555 (6th Cir. 2003) ("Simply waiting for another sovereign to finish prosecuting a defendant is without question a valid reason for delay that weighs in favor of the government." (cleaned up)); *United States v. Grimmond*, 137 F.3d 823, 828 (4th Cir. 1998) ("When a defendant violates the laws of several different sovereigns, as was the case here, at least one sovereign, and perhaps more, will have to wait its turn at the prosecutorial turnstile."). At the very least, it's not a reason that weighs heavily against the government.

Because the first three factors don't weigh heavily against the government, Kelly was required to show he suffered actual prejudice to establish a violation of his speedy-trial rights. *See Harris*, 376 F.3d at 1290. He hasn't tried to do so on appeal and so abandons the issue. *United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) (issues not plainly and prominently raised on appeal, even if properly preserved below, will be deemed abandoned). Regardless, this case doesn't implicate the policy interests protected by the speedy-trial right because during the delay, Kelly was already in state custody facing multiple criminal charges, and he hasn't identified any harm to his defense of the federal prosecution caused by the delay. *See Villareal*, 613 F.3d at 1355; *Clark*, 83

F.3d at 1354. Accordingly, the district court properly denied Kelly's motion to dismiss the indictment on speedy-trial grounds.

## II.

We review *de novo* whether sufficient evidence supports a guilty verdict, "viewing the evidence in the light most favorable to the government, and drawing all reasonable factual inferences in favor of the jury's verdict." *United States v. Jiminez*, 564 F.3d 1280, 1284 (11th Cir. 2009). The evidence is sufficient if "a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Mercer*, 541 F.3d 1070, 1074 (11th Cir. 2008). "The evidence may be sufficient even when it does not exclude every reasonable hypothesis of innocence or is not wholly inconsistent with every conclusion except that of guilt, since a jury is free to choose among reasonable constructions of the evidence." *United States v. Peters*, 403 F.3d 1263, 1268 (11th Cir. 2005) (cleaned up). In conducting our review, we "must accept a jury's inferences and determinations of witness credibility." *United States v. Wright*, 392 F.3d 1269, 1273 (11th Cir. 2004).

Section 922(g)(a) generally makes it unlawful to knowingly possess a firearm after a felony conviction. 18 U.S.C. § 922(g)(1). Possession may be actual or constructive. *United States v. Green*, 873 F.3d 846, 852 (11th Cir. 2017); *United States v. Perez*, 661 F.3d 568, 576 (11th Cir. 2011). "A defendant constructively possesses a firearm or ammunition if he (1) is aware of or knows of the firearm's or ammunition's presence and (2) has the ability and intent to exercise control over that firearm or ammunition." *Green*, 873

F.3d at 852. Mere presence near or awareness of the object's location is insufficient, but a defendant's connection to the location where a gun is found may be relevant to whether he had knowledge of the gun or the ability and intent to exercise control or dominion over it. *See id.* at 852–54.

In the light most favorable to the verdict, the evidence at trial showed that Kelly crashed a car while fleeing from a traffic stop and then fled on foot before eventually being caught and arrested. Inside the car, which was registered to Kelly's ex-girlfriend, officers found a loaded Ruger handgun in the center console and a glass container with cannabis in it, plastic bags, and a digital scale in the backseat. No one else was in the car, and Kelly was very likely one of four contributors to DNA found on the gun.

A reasonable jury could infer from these facts that Kelly constructively possessed the firearm. Kelly was driving with ready access to the weapon later found in the center console. His DNA was found on the weapon. He had a connection to the car and was its sole occupant before the gun was found. Cannabis, plastic bags, and a digital scale were found in the backseat. *See United States v. Thomas*, 242 F.3d 1028, 1032 (11th Cir. 2001) (evidence of drug trafficking in close proximity to a gun is relevant to proving knowing possession of the gun). And Kelly desperately fled from police, crashing a car and then fleeing on foot, which a jury could attribute to his awareness of the firearm he knew he couldn't lawfully possess. *See United States v. Blakey*, 960 F.2d 996, 1000 (11th Cir. 1992)

("Evidence of flight is admissible to demonstrate consciousness of guilt and thereby guilt.").

Viewed in the light most favorable to the verdict, the evidence was more than sufficient to prove beyond a reasonable doubt that Kelly knew of the gun's presence and had the ability and intent to exercise control over it. *See United States v. Howard*, 742 F.3d 1334, 1341–42 (11th Cir. 2014) (finding sufficient evidence of constructive possession where "the firearm was found in the glove compartment of [the defendant's] car along with a copy of his tag receipt, that he had been in the driver's seat just before the search, and that he had a prior conviction for possession of a firearm"); *United States v. Gonzalez*, 71 F.3d 819, 835 (11th Cir. 1996) (holding that the evidence was sufficient to convict under § 922(g)(1) when it showed that the defendant was driving a car "with ready access to the weapon later discovered in the glove compartment"), *abrogated on other grounds by Arizona v. Gant*, 556 U.S. 332, 335 (2009); *see also United States v. Gates*, 967 F.2d 497, 499 (11th Cir. 1992) (evidence that two pistols were under the driver's seat established that the passenger "had sufficient access to the firearms to establish possession" under 18 U.S.C. § 924(c)).

Kelly quibbles with the DNA evidence and asserts that it failed to rule out the possibility that his DNA transferred to the gun without his knowledge. He notes that DNA testing is unable to determine how DNA is deposited onto items, and he points to testimony by the DNA analyst who indicated it was possible "a person identified by a match of DNA discovered at a crime scene may have

never come in contact with that object or person at that crime scene."

But when we review for evidentiary sufficiency, the evidence need not be "wholly inconsistent with every conclusion except that of guilt, since a jury is free to choose among reasonable constructions of the evidence." *Peters*, 403 F.3d at 1268. The jury was free to infer that the presence of Kelly's DNA on the gun supported a conclusion that he possessed the firearm, despite the limitations of that technology. *See id.*

For these reasons, we affirm Kelly's conviction for possession of a firearm after a felony conviction under 18 U.S.C. § 922(g)(1).

**AFFIRMED.**