[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 28, 2012
JOHN LEY
CLERK

No. 11-13674
Non-Argument Calendar

_____

D.C. Docket No. 1:09-cr-20641-DLG-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDWARD WARREN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 28, 2012)

Before HULL, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Following a jury trial, Defendant Edward Warren appeals his convictions for conspiracy and attempt to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), and 18 U.S.C. § 2. After review, we affirm.

## I. BACKGROUND

### A. First Appeal

This is Warren's second appeal of his convictions. In his first appeal, this Court affirmed all of the district court's challenged rulings except its sua sponte determination at trial that there was probable cause to arrest Warren. We vacated the district court's sua sponte probable cause ruling and remanded "solely for an evidentiary hearing as to the motion to suppress with reference to the probable cause for arrest issue." United States v. Warren, 422 F. App'x 811 (11th Cir. 2011).

### B. Second Appeal

On remand, the district court held the required evidentiary hearing. Special Agent Luis Rosa testified about the circumstances of Warren's arrest.

At the time of Warren's arrest, the FBI was investigating a drug trafficking organization that was importing cocaine into South Florida. Two days earlier,

agents had seized six kilograms of cocaine at the Miami Airport. An FBI confidential source ("CS") negotiated with Ezequiel Rivera, Defendant Warren's co-defendant, to sell him the six kilograms of cocaine and arranged to meet co-defendant Rivera at a store parking lot to complete the transaction.

Special Agent Rosa was the lead investigator and part of the surveillance team during the controlled buy. Special Agent Rosa had a clear line of sight during the transaction and made the decision to arrest both Rivera and Defendant Warren.

According to Special Agent Rosa, he observed a gray Mercedes drive into the parking lot and park four to six feet away from the CS's Nissan Murano. After the CS got out of the Nissan Murano, co-defendant Rivera got out of the driver's side of the Mercedes, leaving the driver's side door open. Through the Nissan Murano's front windshield, Special Agent Rosa could see the silhouette of a person sitting on the passenger side of the Mercedes. After Rivera exited the Mercedes, Special Agent Rosa saw Rivera look back into the Mercedes and have "some type of . . . conversation or an exchange from inside of the [Mercedes]." Rivera then turned around and gave something to the CS and put the six kilograms of "sham" cocaine from the CS into the trunk of the Mercedes.

When asked what facts led him to decide to arrest Defendant Warren (the

passenger in the Mercedes), Special Agent Rosa stated that in his experience as a narcotics investigator, when a person is accompanied by another individual to a narcotics deal, the second individual "has some interest in this transaction to be completed" or is "muscle" used "for safety because of the risk of these kinds of transactions." Special Agent Rosa further explained that "the mere fact that the door stayed open at all time[s] and there [was] some interaction between . . . both individuals" led Special Agent Rosa to believe Defendant Warren was involved in the transaction.

Special Agent Rosa stated that during the interaction he could tell that Defendant Warren and Rivera were looking at each other. Although Special Agent Rosa could not see "any hand-to-hand activity," he believed he had observed a "[p]hysical and verbal exchange" and testified that he saw "Rivera's hand reaching inside the car and extracting something from the car," which he later learned was the money used in the drug transaction.

Special Agent Rosa testified that during the negotiations, the CS posed as a "facilitator[ ] to bring narcotics outside the airport." Rivera agreed to pay $3,000 per kilogram, or a total of $18,000 for 6 kilograms of cocaine, paying half ($9,000) up front and the rest later. The street value of the cocaine was $180,000. After the "takedown," agents found $8,980 in the CS's car.

The district court watched the video surveillance tape of the controlled buy several times and asked Special Agent Rosa to point out the interaction between Rivera and Defendant Warren. After viewing the videotape, the district court stated that it "did see what appeared to be looking into the vehicle, extracting money from the vehicle, giving it to the CS, and seeing the CS open the door and placing it into the Murano."

After the hearing, the district court issued an order denying Defendant Warren's motion to suppress. The district court found, inter alia, that: (1) "SA Rosa observed co-defendant Rivera looking back into the Mercedes and having a conversation with the occupant, later identified as Defendant Warren"; (2) "Rivera was observed receiving a package from Defendant Warren" that Rivera immediately gave to the CS; (3) throughout, the door to the Mercedes remained open; (4) the CS "then opened the front passenger side door to his vehicle and placed the package inside of his car"; and (5) Rivera and the CS went to the back of the CS's vehicle, where Rivera picked up the bag of sham cocaine and placed it in the trunk of the Mercedes.

Based on these findings, the district court concluded that "the totality of the circumstances, viewed from the standpoint of . . . an objectively reasonable police officer, support[s] a finding of probable cause to arrest Defendant Warren."

Emphasizing "the international posture of the transaction; the large quantity of drugs involved, six (6) kilograms, with a street value of $180,000; and the observed conversation and physical exchange of currency between co-defendant Rivera and Defendant Warren," the district court concluded that it was unlikely "given the facts outlined above, Defendant Warren would have accompanied co-defendant Rivera to the B.J.'s parking lot without knowledge of the transaction." Defendant Warren filed this appeal.

## II. DISCUSSION

Under the Fourth Amendment, an officer may arrest a suspect without a warrant "if there is probable cause to believe that the suspect has committed or is committing an offense." Michigan v. DeFillippo, 443 U.S. 31, 35, 999 S. Ct. 2627, 2631 (1979). "For probable cause to exist, an arrest must be objectively reasonable based on the totality of the circumstances." United States v. Dunn, 345 F.3d 1285, 1290 (11th Cir. 2003) (quotation marks omitted). An arrest is objectively reasonable "when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Id. (quotation marks omitted). Probable cause "requires more than suspicion," but not

"convincing proof, and need not reach the same standard of conclusiveness and probability as the facts necessary to support a conviction." Id.

Presence alone is not sufficient to constitute probable cause, but "presence and additional factors that would lead a prudent person to believe that an offense has been or is being committed is sufficient." United States v. Irurzun, 631 F.2d 60, 63 (5th Cir. 1980).[1] Because behavior may seem innocent to the untrained eye, courts must also consider the officer's observations and experience. United States v. Gonzalez, 969 F.2d 999, 1003-04 (11th Cir. 1992).[2]

Here, the district court did not err in denying Defendant Warren's motion to suppress based on his allegedly unlawful arrest. According to Special Agent Rosa's testimony, which was corroborated by the surveillance videotape, co-defendant Rivera left the driver's side door open and interacted with Defendant Warren during the drug deal. This interaction between Rivera and Defendant Warren involved Rivera looking at and speaking to Defendant Warren and then

---

[1]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down on or before September 30, 1981.

[2]We review a district court's denial of a motion to suppress as a mixed question of law and fact, reviewing the district court's findings of fact for clear error and its legal conclusions de novo. United States v. Virden, 488 F.3d 1317, 1321 (11th Cir. 2007). In so doing, we construe all the facts in the light most favorable to the prevailing party below. Id. We also give "due weight" to the district court's finding that an officer is credible and that the officer's inference drawn from his own experience is reasonable. Ornelas v. United States, 517 U.S. 690, 700, 116 S. Ct. 1657, 1663 (1996).

reaching his hand inside the Mercedes and extracting something from it. After this interaction, Special Agent Rosa saw Rivera turn around and hand something to the CS, which the CS then put inside his Nissan Murano. Only after this exchange did Rivera obtain the bag of cocaine.

Defendant Warren argues that the trial evidence contradicts Special Agent Rosa and rendered his testimony "patently non-credible." Defendant Warren points to Special Agent John Thomas's trial testimony that he did not see anything during the controlled buy to indicate Defendant Warren was involved in the transaction. However, Special Agent Thomas did not have the same vantage as Special Agent Rosa during the transaction and was primarily responsible for relaying developments to other members of the surveillance team by radio. Special Agent Rosa, on the other hand, had a clear line of sight and was responsible for making the "takedown" decision.

Defendant Warren also relies on co-defendant Rivera's trial testimony that Defendant Warren handed him the money for the transaction before Rivera got out of the Mercedes. When Defendant Warren actually handed Rivera the money is irrelevant to the probable cause determination. What matters is that Special Agent Rosa observed co-defendant Rivera interact with Defendant Warren during the transaction, and then reach into the Mercedes and appear to take something from

Defendant Warren, which Rivera then handed to the CS. Moreover, Special Agent Rosa's testimony about Rivera's conduct during the controlled buy was corroborated by the surveillance tape.

Defendant Warren argues that Special Agent Rosa's testimony is implausible because the government did not present it at trial. However, the government did not need Special Agent Rosa's testimony at trial. Probable cause to arrest Warren was not at issue at trial. And, the government already had ample evidence to rebut Defendant Warren's "mere presence" defense, including Warren's own post-arrest admission that he was involved; co-defendant Rivera's testimony as to Defendant Warren's involvement; and the surveillance tape. As such, Special Agent Rosa's testimony about the interaction between Defendant Warren and Rivera during the controlled buy was unnecessary. Accordingly, Defendant Warren has not given us a reason to second-guess the district court's decision to credit Special Agent Rosa's testimony at the evidentiary hearing.[3]

Given the facts as found by the district court, we agree that it was reasonable for Special Agent Rosa to believe that Defendant Warren was involved

---

[3]Because there is no basis to disregard Special Agent Rosa's testimony at the evidentiary hearing, we do not address Defendant Warren's argument that,"[w]hen Rosa's testimony is properly disregarded," the doctrine of the law of the case precludes considering whether the trial evidence established probable cause.

in the drug deal. Special Agent Rosa explained that, in his experience as a narcotics investigator, when a second person accompanies the buyer to a drug deal, the second person often has an interest in the drug deal or is present to ensure the buyer's safety. As the district court pointed out, the transaction involved a large amount of cocaine, with a street value of $180,000. Based on Special Agent Rosa's experience, he reasonably inferred that Defendant Warren knowingly accompanied Rivera to the drug deal and handed Rivera the money to complete the transaction. See Maryland v. Pringle, 540 U.S. 366, 373, 124 S. Ct. 795, 801 (2003) (explaining that passengers in cars are often "engaged in a common enterprise with the driver" and that drug dealing is "an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him"). We agree with the district court that Special Agent Rosa had an objectively reasonable belief, based on the totality of the circumstances, that Defendant Warren was not simply an unwitting companion, but a knowing and willing participant in the cocaine transaction.

**AFFIRMED.**