[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-10257

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ANGEL GABRIEL PALANCO,
HUMBERTO VASQUEZ DIAZ,
OSVALDO GONZALEZ,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

D.C. Docket No. 1:22-cr-20350-RKA-3

_____

Before BRANCH, ANDERSON, and HULL, Circuit Judges.

PER CURIAM:

Defendants Angel Gabriel Palanco, Osvaldo Gonzalez, and Humberto Vasquez Diaz were interdicted at sea on a vessel carrying 972 kilograms of cocaine. After stipulating to the facts and a bench trial on the cocaine-related charges, the district court found the defendants guilty of the two charged drug crimes. The defendants appeal their drug convictions under the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. §§ 70501-70508. On appeal, the defendants challenge only the denial of their joint motion to dismiss the indictment for lack of subject matter jurisdiction, and violations of Federal Rule of Criminal Procedure 5 and of their Sixth Amendment rights to a speedy trial. After review, we affirm.

## I.  BACKGROUND

### A.    July 8, 2022 Interdiction

On July 8, 2022, the United States Coast Guard ("USCG") interdicted and boarded a go-fast vessel approximately 130 nautical miles south of the Dominican Republic, within the Dominican Republic's Exclusive Economic Zone ("EEZ") but outside any

nation's 12-mile territorial seas.[1]  The vessel had no visible indicia of nationality.

The boarding team interviewed the three crewmen on board—the defendants here.  They gave their names but refused to answer questions about the vessel's master or nationality. After receiving authorization to treat the vessel as one without nationality, the boarding team searched the vessel and found several packages of contraband that tested positive for cocaine. The USCG reported an at-sea weight of 972 kilograms of cocaine. The USCG transferred the defendants and the suspected cocaine to the USS Wichita and destroyed the go-fast vessel.

## B.    July 26, 2022 Complaint and Presentment to a Magistrate Judge

Eighteen days later, on July 26, 2022, a criminal complaint was filed in the Southern District of Florida charging the defendants with one conspiracy count under the MDLEA.

On the same day, the USCG delivered the defendants to Puerto Rico, where they were arrested and orally interviewed by agents with the Drug Enforcement Agency ("DEA").  DEA agents also took witness statements from USCG members and received the evidence the USCG gathered at sea, including photographs,

---

[1] The EEZ "sits just beyond a nation's territorial waters but within 200 miles of the coastal baseline." *United States v. Alfonso*, 104 F.4th 815, 821 (11th Cir. 2024).

videos, and tests performed on the drugs seized from the go-fast vessel.

Also on July 26, 2022, the defendants appeared via video teleconference before a U.S. magistrate judge in the District of Puerto Rico. The magistrate judge advised the defendants of their rights and of the charges in the criminal complaint in Case No. 22-03262 filed in the Southern District of Florida. A federal defender in Puerto Rico was appointed to represent defendant Gonzalez and Criminal Justice Act counsel were appointed for defendants Palanco and Vasquez Diaz.

## C.    August 4, 2022 Indictment

On August 4, 2022, a federal grand jury in the Southern District of Florida indicted the defendants for: (1) conspiracy to possess with intent to distribute cocaine on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a)(1) and 70506(b); and (2) possession with intent to distribute cocaine on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 70503(a)(1) and 18 U.S.C. § 2.

On August 8, 2022, the defendants again appeared before a magistrate judge in the District of Puerto Rico, who ordered that the defendants remain detained and be removed to the Southern District of Florida.

On September 22, 2022, defendant Palanco was flown from Puerto Rico to Florida. On November 29, 2022, defendants

Gonzalez and Vasquez Diaz were flown from Puerto Rico to Florida.

On January 3, 2023, the defendants appeared before a magistrate judge in the Southern District of Florida. The magistrate judge appointed new counsel, and defendant Gonzalez was arraigned. On January 5, 2023, defendants Palanco and Vasquez Diaz were arraigned.

### D.     February 13, 2023 Trial Date

On January 11, 2023, the district court set an initial trial date of February 13, 2023, but the parties later jointly moved for a 60-day continuance, which was granted.

### E.     March 22, 2023 Motion to Dismiss Indictment

On March 22, 2023, the defendants filed a joint motion to dismiss the indictment on three grounds: (1) the district court lacked subject matter jurisdiction because, *inter alia*, the MDLEA was unconstitutional; (2) the government's conduct violated Federal Rule of Criminal Procedure 5; and (3) their Sixth Amendment speedy trial rights were violated.

In a thorough order, the district court denied the defendants' motion to dismiss the indictment on all grounds.

As to the defendants' speedy trial arguments, the district court concluded that any delay less than one year is not presumptively prejudicial, thus ending the Sixth Amendment speedy trial analysis under *Barker v. Wingo*, 407 U.S. 514 (1972). The district court found that the pretrial delay in this case was at most

seven months (depending upon how it is calculated) and fell "well short of the one-year triggering point," which ended the analysis. That seven months was from the defendants' July 8, 2022 interdiction to the first trial date of February 13, 2023 (which was seven months and five days).

## F.     Motion for Reconsideration and Evidentiary Hearing

After the defendants filed a motion for reconsideration as to the speedy trial ruling, the district court held an evidentiary hearing on the motion.  The government presented two witnesses.  First, a DEA task force officer testified to, *inter alia*, arresting and interviewing the defendants and collecting evidence from the USCG in Puerto Rico on July 26, 2022.

Second, the Deputy U.S. Marshal David DiCicco testified about the process for transporting detainees from Puerto Rico to Florida.

Deputy DiCicco admitted that COVID-19 protocols for transporting pretrial detainees, limited availability and timing of flights out of Puerto Rico, and a mistake in requesting a transfer delayed the defendants' departures from Puerto Rico to Florida. The defendants arrived in Puerto Rico on July 26, 2022 but defendant Palanco flew to Florida on September 22, 2022.  And defendants Gonzalez and Vasquez Diaz flew to Florida on November 29, 2022.

Deputy DiCicco also explained that then mistakes in monitoring the constantly changing flight-arrival manifests—to notify the parties in Florida, including pretrial services,

prosecutors, and defense counsel when a detainee has arrived at a federal detention center ("FDC")—had resulted in delays once the defendants arrived in Florida. However, Deputy DiCicco added that the U.S. Marshals Service has since changed its system to address such lapses.

The defendants did not present any evidence at the hearing.

After hearing extensive argument from the parties on the speedy trial issue, the district court stated that it agreed with the defendants' argument that under *Barker* the threshold issue of presumptive prejudice turns on "a more dynamic assessment of the facts of each individual case" than "a strict one-year threshold" and that it granted their motion for reconsideration to that extent.

The district court then considered multiple factors and again concluded that the defendants did not make a threshold showing of presumptive prejudice. Specifically, the district court stressed that: (1) the case was neither complicated nor simple; (2) the offense was very serious; (3) the defendants would never have received bond or served sentences of less than six months had they been assigned counsel in Florida earlier than January 3, 2023; (4) the delay from July 26, 2022 to February 13, 2023 was only "halfway" to the typical one-year triggering point; and (5) the delay was due to "uncondoned" negligence. Referring to Deputy DiCicco's testimony, the district court stated, "I see mistakes that were made, I see things that were missed. I see people not being diligent, people missing manifests, people missing out on names as they come in, the FDC not communicating with the marshals, the

marshals not communicating with each other. That just all sounds like negligence to me."

The district court alternatively conducted a full analysis of the four *Barker* factors and concluded that not all of the first three factors—length of delay, reason for the delay, and defendants' assertion of their speedy trial rights—weighed *heavily* against the government. In particular, the district court found that the first factor weighed in favor of the government and that the second factor weighed in favor of the defendants, but "less heavily" because there was only government negligence not deliberate misconduct.

Thus, the defendants had to demonstrate the fourth *Barker* factor—actual prejudice—which the district court determined they did not do. As to actual prejudice, the district court emphasized that the defendants did not show (1) oppressive conditions of detention or (2) impairment of their defense. Thus, the district court denied the motion for reconsideration to the extent it sought dismissal of the indictment.

## G.    Bench Trial and Sentencing

At a bench trial, the defendants waived specific findings of fact and their rights to a jury trial and to testify. The parties also agreed to a stipulation of the facts. The district court found the defendants guilty as charged.

The district court sentenced each defendant to concurrent 77-month prison terms on each of the two drug crimes, with credit for time served from July 8, 2022, the date the defendants were

detained at sea.  The defendants timely appealed their convictions but do not challenge their sentences.[2]

## II.  STANDARDS OF REVIEW

Generally, we review for an abuse of discretion the denial of a motion to dismiss an indictment based on non-constitutional grounds, such as Rule 5 violations.  *See United States v. Alfonso*, 104 F.4th 815, 820 (11th Cir. 2024); *United States v. McPhee*, 336 F.3d 1269, 1271 (11th Cir. 2003).  But when the basis for the motion to dismiss an indictment is a constitutional issue and lack of subject matter jurisdiction, our review is *de novo*.  *Alfonso*, 104 F.4th at 820.  We also review *de novo* the district court's interpretation of a statute and whether the statute is constitutional.  *Id.*

Whether a defendant's Sixth Amendment right to a speedy trial was violated is a mixed question of law and fact.  *United States v. Vargas*, 97 F.4th 1277, 1286 (11th Cir. 2024).  As such, we review the district court's legal conclusions *de novo* and its factual findings for clear error.  *Id.*  A factual finding is clearly erroneous "only if we are left with the definite and firm conviction that a mistake has been committed."  *Id.*

---

[2] At sentencing, defendant Palanco indicated the correct spelling of his last name is Polanco.  In his notice of appeal and appeal brief, however, he uses Palanco, so we do as well.

### III.  DISCUSSION

### A.    Subject Matter Jurisdiction and Constitutionality of the MDLEA

The MDLEA makes it a crime to knowingly and intentionally possess a controlled substance with intent to distribute while onboard a vessel subject to the jurisdiction of the United States and to conspire to do the same.  46 U.S.C. §§ 70503(a)(1), (e)(1), 70506(b).[3]  The MDLEA "applies even though the act is committed outside the territorial jurisdiction of the United States." *Id.* § 70503(b).  Under the Felonies Clause in Article I, Section 8, Clause 10 of the Constitution, Congress has the power to "define and punish Piracies and Felonies committed on the high Seas."  U.S. Const. art. I, § 8, cl. 10.  The MDLEA is constitutional as applied to vessels on the "high seas" under the Felonies Clause. *United States v. Cabezas-Montano*, 949 F.3d 567, 587 (11th Cir. 2020); *United States v. Valois*, 915 F.3d 717, 722 (11th Cir. 2019); *United States v. Cruickshank*, 837 F.3d 1182, 1187-88 (11th Cir. 2016); *United States v. Campbell*, 743 F.3d 802, 806 (11th Cir. 2014).

On appeal, the defendants (1) do not dispute that in the MDLEA Congress defined the "high seas" to include the EEZs of a foreign nation, and (2) admit that their two drug offenses under the MDLEA occurred within the Dominican Republic's EEZ. Nonetheless, the defendants argue that under international law,

---

[3] On appeal, the defendants do not dispute that the go-fast vessel on which they were found is a vessel without nationality and thus a covered vessel under the MDLEA. *See* 46 U.S.C. § 70502(c)(1)(A).

the EEZ is not part of the "high seas," and thus Congress exceeded its authority under the Felonies Clause.

As the defendants concede, this Court recently rejected this argument in *United States v. Alfonso*, 104 F.4th 815 (11th Cir. 2024), *petition for cert. filed*, (U.S. Dec. 19, 2024) (No. 24-6177). The defendants in *Alfonso*, like the defendants here, were interdicted by the USCG in a go-fast vessel in the Dominican Republic's EEZ and challenged the constitutionality of the MDLEA as a valid exercise of Congress's Felonies Clause power. *Alfonso*, 104 F.4th at 818-19.

The *Alfonso* Court held that "the EEZ is part of the 'high seas' and thus within Congress's authority under the Felonies Clause" in the U.S. Constitution. *Id.* at 818, 823. The Court also concluded that "international law does not limit the Felonies Clause" and that "enforcement of the MDLEA in EEZs is proper." *Id.* at 826-27; *see also United States v. Canario-Vilomar*, 128 F.4th 1374, 1381-82 (11th Cir. 2025) (rejecting similar constitutional challenges by defendants interdicted in Panama's and Colombia's EEZs as foreclosed by *Alfonso* and other binding precedent).

The defendants acknowledge that *Alfonso* rejected their particularized constitutional challenge but they maintain their argument in good faith to preserve the issue for further review. We are bound by *Alfonso*. *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). The district court thus did not err in denying the defendants' motion to dismiss the indictment for lack of subject matter jurisdiction.

**B.    Rule 5**

The defendants contend that the government violated two separate but related provisions of Rule 5 of the Federal Rules of Criminal Procedure. Rule 5(a)(1)(B), entitled "Appearance Upon an Arrest," provides, *inter alia*, that "[a] person making an arrest *outside the United States* must take the defendant *without unnecessary delay* before a magistrate judge, unless a statute provides otherwise." Fed. R. Crim. P. 5(a)(1)(B) (emphases added).

And Rule 5(b), entitled "Arrest Without a Warrant," provides that "[i]f a defendant is arrested without a warrant, a complaint meeting Rule 4(a)'s requirement of probable cause must be *promptly filed* in the district where the offense was allegedly committed." Fed. R. Crim. P. 5(b) (emphasis added).

For both Rule 5 purposes, all parties use the July 8, 2022 interdiction and detention of the defendants as their "arrest" date, so we do too, without determining at what point the detention became an arrest. The parties also use 18 days as the delay period: from the July 8 interdiction on the high seas until the July 26 filing of the criminal complaint in Florida and the July 26 presentment of the defendants to the magistrate judge in Puerto Rico. We address Rule 5(a) and then Rule 5(b).

1. Rule 5(a)(1)(B) - Appearance Upon Arrest

"[T]he purpose of Rule 5(a) is to prevent oppressive police interrogations and other third-degree tactics before bringing the accused in front of an officer of the court." *Cabezas-Montano*, 949 F.3d at 591 (quotation marks omitted). As to whether a

presentment period is "unnecessary delay" under Rule 5(a), we consider four "*Purvis* factors": (1) the distance between the location of the defendant's arrest and the U.S. port to which he was brought; (2) the time between the defendant's arrival at the U.S. port and his presentment to the magistrate judge; (3) any evidence of mistreatment or improper interrogation during the delay; and (4) any reason for the delay, such as exigent circumstances or emergencies. *Id.*; *United States v. Purvis*, 768 F.2d 1237, 1238-39 (11th Cir. 1985).

Importantly, the defendant bears the burden to show that a delay was "unnecessary" and thus a Rule 5(a) violation. *Cabezas-Montano*, 949 F.3d at 592. To carry that burden, the defendant must "develop the factual predicates for his claim." *Id.* at 592 & n.20. The defendant must present evidence in the district court of "the reasons or circumstances behind the delay" and cannot rely on "pure speculation" that is unsupported by the record. *Id.* at 592.

Here, to support their alleged Rule 5(a) violation, the defendants' motion relied solely on the 18-day length of this delay from their July 8 interdiction to their July 26 presentment to the magistrate judge in Puerto Rico. Specifically, the defendants' motion merely pointed out that "[t]he delay in this case was *more than two weeks*," and stated in conclusory fashion and without any evidentiary support that "this delay is far beyond what could be considered reasonable or necessary." In the district court, the defendants did not cite *Purvis* (or its progeny), analyze any of the *Purvis* factors, or allege any other facts relevant to the *Purvis* factors.

More specifically, the defendants did not allege (or submit evidence of) three *Purvis* factors: (1) the distance or the typical amount of time needed to travel between the point of their interdiction and the port in Puerto Rico (factor one); (2) mistreatment or improper interrogation by the USCG (factor three); or (3) the reason or reasons for the delay (factor four).

On appeal, the defendants point out that after their interdiction, the USCG coordinated with the DEA to arrive in Puerto Rico at the same time. The defendants ask us to infer from this fact that "either the Coast Guard or the D.E.A. waited on the other." The defendants also argue that no exigent circumstances or emergencies caused the delay because the government "had ample opportunity to advise of any" exigent circumstances or emergencies and did not. But these arguments merely ask us to "speculate as to the cause of the delay," something we do not do, and also impermissibly shift the burden from the movants to the government to develop the required factual predicates for the defendants' Rule 5(a) claim. *See id.* at 592 n.20.

In addition, as to the third *Purvis* factor, the defendants' motion included only a news article published five years earlier in 2017 and describing conditions in which other interdicted drug smugglers at sea allegedly reported being shackled to the USCG ship's deck and deprived of a toilet, bed, and adequate food. But none of the defendants here reported being detained in such conditions, and the defendants admit on appeal that the extent of any mistreatment "is unknown." In any event, this news article is

24-10257                Opinion of the Court                15

not evidence, and the defendants presented no evidence of such mistreatment.[4]

The defendants suggest that merely being held for 18 days without process or contact with friends, family, or counsel constitutes mistreatment and satisfies this third *Purvis* factor. But in *United States v. Hurtado*, this Court concluded the third *Purvis* factor weighed *against* the defendant who was treated humanely but had "no contact with family, attorneys, or a judge" for 48 days, a full month longer than the defendants here. *See* 89 F.4th 881, 889, 898 (11th Cir. 2023); *see also Cabezas-Montano*, 949 F.3d at 592-93 (involving 49-day presentment delay in an MDLEA case); *United States v. Castillo*, 899 F.3d 1208, 1217-18 (11th Cir. 2018) (Martin, J., concurring) (involving 19-day presentment delay in an MDLEA case).

For all of these reasons, the defendants failed to carry their burden to show the 18-day delay here was "unnecessary" under Rule 5(a)(1)(B).[5]  Accordingly, the district court did not abuse its

---

[4] The defendants assert, but this Court has never adopted, an outrageous government conduct defense. Even assuming this Court were to adopt it, the outrageous government conduct doctrine does not apply when the defendant alleges mistreatment "*after* the conclusion of his criminal acts and *prior to* indictment." *See United States v. Jayyousi*, 657 F.3d 1085, 1111-12 (11th Cir. 2011) (emphasis added).

[5] We note that at the evidentiary hearing on the speedy trial issue, the defendants did not ask to present evidence on other issues. On appeal, defendants make a statement in passing that the district court "erroneously denied" them an evidentiary hearing on their purported Rule 5 violations.

discretion in denying the defendants' motion to dismiss their indictment based on a purported Rule 5(a) violation.

One final observation. Given that we conclude that the defendants as movants failed to carry their burden to show the presentment delay was "unnecessary," we need not, and do not, reach the issue of whether only suppression of evidence, and not dismissal of an indictment, is the available remedy for a Rule 5(a)(1)(B) violation. *See United States v. Macrina*, 109 F.4th 1341, 1347 (11th Cir. 2024) ("This Court may affirm on any ground supported by the record, regardless of whether that ground was relied upon or even considered below." (quotation marks omitted)).

### 2. Rule 5(b) - Arrest Without a Warrant

As stated above, Rule 5(b) requires that "[i]f a defendant is arrested without a warrant, a complaint meeting Rule 4(a)'s requirement of probable cause must be *promptly filed* in the district *where the offense was allegedly committed*." Fed. R. Crim. P. 5(b) (emphases added). Undisputedly, the criminal complaint filed on July 26 set forth clear probable cause for defendants' continued detention and arrest on drug crimes. Further, under the MDLEA, when defendants are interdicted with drugs on the high seas, the government can file the criminal complaint "in any district" of the United States. 46 U.S.C. § 70504(b)(2). Thus, it is not clear that

---

Such passing references are not sufficient to preserve an issue for appellate review. *See United States v. Stein*, 846 F.3d 1135, 1151 n.15 (11th Cir. 2017).

Rule 5(b)'s provision—about promptly filing a complaint in the district where the offense was allegedly committed—has any application to this "high seas" case.

Nonetheless, we need not decide this issue because the July 26 criminal complaint was "promptly filed" after the defendants' July 8 interdiction and detention. Whether a complaint is "promptly filed" for purposes of Rule 5(b) necessarily will depend on the particular facts and circumstances. Here, the defendants were interdicted and detained by the USCG on the high seas—130 nautical miles south of the Dominican Republic—and then brought by ship to Puerto Rico to appear before a magistrate judge. For the same reasons the defendants did not show an unnecessary delay in presentment to the magistrate judge under Rule 5(a), we conclude the defendants as movants did not establish a Rule 5(b) violation. Indeed, the government filed the criminal complaint in the Southern District of Florida on July 26, 2022, the same day the defendants arrived in Puerto Rico and before they were presented to the magistrate judge and appointed counsel. Under the particular circumstances of this case, we conclude that the criminal complaint was promptly filed for Rule 5(b) purposes.

We also note that, similar to this case, the criminal complaint in *Cabezas-Montano* was filed the same day the defendant was presented to the magistrate judge. *Id.* at 582. While *Cabezas-Montano* explicitly addressed a Rule 5(a) presentment-delay claim, without explicitly mentioning Rule 5(b), the fact remains that the 49-day delay in that case was as to *both* presentment under Rule

5(a) and the filing of the complaint under Rule 5(b). *Id.* at 582; *see also Hurtado*, 89 F.4th at 889-90; *Castillo*, 899 F.3d at 1211. In any event, the criminal complaint in this case was "promptly filed" in Florida 18 days after the USCG interdicted and detained the defendants on the high seas in the EEZ of the Dominican Republic.

Furthermore, the main thrust of the defendants' Rule 5(b) argument is that generally a judicial determination of probable cause is required within 48 hours of a warrantless arrest and thus 18 days is too long. But Rule 5(b) itself does not mention or require a "judicial determination." Rather, presentment to the magistrate judge is under Rule 5(a). In any event, the general 48-hour rule for showing probable cause—to which defendants refer—was developed in Fourth Amendment cases involving warrantless arrests *inside the United States*. *See Cnty of Riverside v. McLaughlin*, 500 U.S. 44, 47-48 (1991) (involving individuals arrested and jailed in Riverside County, California without a warrant who waited up to 10 days for a probable cause determination at a preliminary hearing); *Gerstein v. Pugh*, 420 U.S. 103, 105 & n.1 (1975) (involving individuals arrested and jailed in Dade County, Florida without a warrant and subsequently charged by information without a judicial determination of probable cause). The defendants ignore that this Court has held that "the Fourth Amendment does not apply to searches and seizures (arrests) by the United States of a non-citizen/non-resident alien <u>arrested in international waters or a foreign country</u>." *Cabezas-Montano*, 949 F.3d at 593. So, this constitutional 48-hour rule under the Fourth Amendment does not apply to the defendants' arrest here or Rule 5(b).

### C.    Sixth Amendment Speedy Trial Claim

The Sixth Amendment guarantees criminal defendants the right to a speedy trial. U.S. Const. amend. VI. In the district court and on appeal, the defendants did not assert a violation of the Speedy Trial Act, 18 U.S.C. §§ 3161-74, and indeed they moved for a continuance of their trial. So only the Sixth Amendment is at issue.

To determine whether a defendant's Sixth Amendment speedy trial rights were denied, courts balance these four *Barker* factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) the actual prejudice to the defendant. *United States v. Villareal*, 613 F.3d 1344, 1350 (11th Cir. 2010); *see Barker v. Wingo*, 407 U.S. 514, 530 (1972). The first *Barker* factor—the length of the delay— "serves a triggering function: it must first be satisfied for the court to analyze the other factors." *United States v. Ogiekpolor*, 122 F.4th 1296, 1305 (11th Cir. 2024) (quotation marks omitted); *see also Barker*, 407 U.S. at 530 ("Until there is some delay which is presumptively prejudicial there is no necessity for inquiry into the other factors that go into the balance.").

A delay "approach[ing] one year" is considered "presumptively prejudicial." *United States v. Dunn*, 345 F.3d 1285, 1296 (11th Cir. 2003); *see also Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992). An eight-month delay, however, is "insufficient to merit a Sixth Amendment speedy trial violation inquiry." *United States v. Derose*, 74 F.3d 1177, 1185 (11th Cir. 1996) (citing *Doggett*

and concluding defendants had "not demonstrated that their Sixth Amendment rights to a speedy trial had been implicated").

Here, as to the first *Barker* factor—the length of the delay— the parties disagree on the proper start date. The defendants argue the speedy trial clock began to run on July 8, 2022, when they were first detained by the USCG. In the district court, the government argued the clock began to run on August 4, 2022, when the defendants were indicted. The district court concluded the clock began on July 26, 2022, when the criminal complaint was filed and the defendants appeared before a magistrate judge in Puerto Rico. Because the defendants' Sixth Amendment speedy trial claims fail even when using the defendants' proposed start date of July 8, we need not resolve this issue. We explain why there was no Sixth Amendment violation.

Using the July 8 start date, the parties agree that the period of delay ended on February 12, 2023, their initial trial date, resulting in a pretrial delay of seven months and five days. This period of pretrial delay is even shorter than the eight-month pretrial delay in *Derose* that this Court determined fell too far short of the "approaching one year" threshold to trigger a full Sixth Amendment analysis under *Barker*. *See* 74 F.3d at 1185. Thus, we agree with the district court that there was no need to evaluate the remaining *Barker* factors.

In an abundance of caution, however, the district court alternatively undertook a full *Barker* analysis and properly

concluded that the defendants' Sixth Amendment speedy trial claims still fail when all the *Barker* factors are considered.

For starters, the seven-month delay here is not presumptively prejudicial. And even assuming *arguendo* that a seven-month delay is long enough to weigh against the government, it cannot be said to do so *heavily*. This is especially true when the length of the delay here is considered in relation to the second *Barker* factor, the reason for the delay. *See Vargas*, 97 F.4th at 1289-90 (examining the first and second *Barker* factors together). "Different reasons for delay are accorded different weights," with intentional delays weighing heavily against the government and valid reasons justifying the delay. *United States v. Oliva*, 909 F.3d 1292, 1301 (11th Cir. 2018). While negligence "falls between the two extremes" and is considered "more neutral," it "still falls on the wrong side of the divide between acceptable and unacceptable reasons." *Id.* at 1302 (quotation marks omitted).

The record reflects, and the defendants do not dispute, that the delay here was due to government negligence, primarily mistakes made by the U.S. Marshals Service in monitoring the defendants as they were transported from Puerto Rico to Florida and alerting the appropriate parties when the defendants arrived at a federal detention center in Florida. As the district court observed, this sort of bureaucratic oversight is not to be condoned and must weigh against the government, but not *heavily*. *See Vargas*, 97 F.4th at 1295 (concluding negligent government conduct causing a 35-month delay did not weigh heavily against the government); *Oliva*,

909 F.3d at 1305 (concluding investigator's negligent mistakes causing a 23-month post-indictment delay did not weigh heavily against the government).

The defendants argue that the government's conduct was "more egregious" than run-of-the-mill negligence and in "callous disregard" of the fact that the defendants were being held in custody with no access to the evidence or a meaningful chance to seek release on bond in Florida.[6]  The district court found, however, that there was "no evidence of egregious or intentional misconduct by the government" and that, in any event, the defendants would have remained in pretrial custody during the seven-month period because under the circumstances—no lawful status, job, residence, or family in the United States and subject to significant mandatory-minimum sentences—they "would never have received a bond."  In light of the testimony of Deputy U.S. Marshal DiCicco presented at the evidentiary hearing, we see no error in the district court's finding of ordinary negligence, rather than callous disregard.

In short, neither of the first two *Barker* factors weigh *heavily* against the government.  *See Vargas*, 97 F.4th at 1288.  Thus,

---

[6] In Puerto Rico, at the defendants' initial presentation on July 26, 2022, the magistrate judge appointed defendants counsel.  Then, on August 8, the magistrate judge held a preliminary hearing, at which the government moved that the defendants remain detained.  Defense counsel represented that they were not contesting identity as to the criminal complaint but requested that the bail hearing be held in the Florida district where the defendants were sought.

24-10257                Opinion of the Court                23

regardless of the weight accorded the third *Barker* factor, the defendants must show the fourth *Barker* factor—actual prejudice. *See Ogiekpolor*, 122 F.4th at 1305; *Vargas*, 97 F.4th at 1289.

"To show actual prejudice, the defendant must show (1) oppressive pretrial incarceration, (2) his own anxiety and concern, or (3) the possibility that his defense was impaired because of the delay." *United States v. Machado*, 886 F.3d 1070, 1081-82 (11th Cir. 2018); *Barker*, 407 U.S. at 532. "[M]ere conclusory allegations are insufficient to establish actual prejudice." *Machado*, 886 F.3d at 1082.

The defendants argue they were prejudiced because they did not have access to attorneys in Florida or the evidence during the seven-month delay. Importantly, though, the defendants concede that their defense was *not* impaired by this lack of access.

This is not surprising. At the evidentiary hearing on the defendants' speedy-trial motion, the DEA task force officer established that all of the evidence in the case was gathered by the time of the defendants' Mirandized interviews in Puerto Rico on August 26, 2022. And that evidence was rock solid—the defendants were on the go-fast vessel with 972 kilograms of cocaine. Accordingly, the defendants do not identify any investigatory trails that went cold, any witnesses or evidence that were lost, or any other effect on their legal defenses or strategies as a result of the seven-month delay.

Instead, the defendants suggest that the mere fact that they "languished so long" in pretrial detention in Florida establishes

actual prejudice. The defendants stress that they were in a foreign country, did not speak English, were poor, and lacked education.

But there is no evidence the defendants' time in pretrial detention in Florida was prolonged by the delay. Indeed, the district court found that the defendants would not have been released from pretrial detention even if they promptly had gained access to counsel and appeared before a magistrate judge in the Southern District of Florida. The district court gave all three defendants credit toward their sentences for their time in pretrial detention from their interdiction on July 8, 2022. And the defendants' conclusory allegations of anxiety and oppression are not beyond that of any pretrial detainee in federal custody.

We also find no merit to the defendants' claims that the 18-day period at sea in the USCG's custody shows actual prejudice because they were held "in secret" and in "abhorrent conditions." There is no evidence in the record that the USCG either intentionally hid the defendants or held them in unacceptable conditions.

Under the circumstances, we conclude the district court did not err in finding that the defendants' Sixth Amendment speedy trial rights were not violated.[7]

---

[7] Because no Sixth Amendment speedy trial violation was shown, Palanco's related argument that dismissal was warranted under Federal Rule of Criminal Procedure 48(b) also fails. *See United States v. Knight*, 562 F.3d 1314, 1324 (11th Cir. 2009) ("When a defendant fails to establish that his Sixth Amendment right to a speedy trial was violated, there is no basis for concluding that the

## IV.  CONCLUSION

After thorough review, we conclude that the district court did not err in denying the defendants' joint motion to dismiss the indictment and affirm the defendants' convictions and sentences.

**AFFIRMED.**

---

district court abused its discretion in refusing to grant appellant's motion insofar as it relied on Rule 48(b)." (quotation marks omitted, alteration adopted)); *Hurtado*, 89 F.4th at 899 n.20; *Dunn*, 345 F.3d at 1297.